## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LI-CHIEN TSAI,

       *Plaintiff*,

   v.

UNITED STATES OF AMERICA,

       *Defendant*.

Civil Action No. 23-2392 (LLA)

## <u>MEMORANDUM OPINION</u>

Plaintiff Li-Chien Tsai brings this action against the Internal Revenue Service ("IRS"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arising out of his request for certain IRS records.[1]  ECF No. 1.  Before the court are the IRS's motion for summary judgment, ECF No. 20, Mr. Tsai's motion to strike the IRS's supporting declaration, ECF No. 23, and Mr. Tsai's motion for leave to file a surreply, ECF No. 28.  The motions are fully briefed.  ECF Nos. 20-21, 23, 24-26, 28-30.  For the reasons explained, the court will grant in part Mr. Tsai's motion for leave for file a surreply, deny Mr. Tsai's motion to strike, and grant the IRS's motion for summary judgment.

---

[1] While the case is captioned as against the "United States," the IRS explains that "[t]he proper party defendants in Freedom of Information Act cases are named agencies, such as the Internal Revenue Service, rather than the United States of America."  ECF No. 20, at 1 n.1.  The IRS indicated that it "intend[ed] to file the document necessary to substitute the Service as the proper party Defendant no later than August 30, 2024."  *Id.*  No such document has been filed. Accordingly, the defendant listed in the case caption will remain the United States of America. For the purposes of this opinion, however, the court will refer to the IRS as the defendant.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2021, Mr. Tsai submitted a FOIA request to the IRS requesting documents related to "payments received by the [IRS] for Mr. Tsai from third parties" for the year 2001.  ECF No. 1-1, at 1-2.  In the request, Mr. Tsai explained that he had been involved with the Peking Investment Fund, a tax shelter that had been the subject of a court case, *Peking Inv. Fund, LLC v. Commissioner*, 106 T.C.M. (CCH) 688 (2013).  ECF No. 1-1, at 1; ECF No. 1 ¶¶ 11-13.  He listed several entities that had also been involved with the Peking Investment Fund and subsequently entered into settlement, non-prosecution, or deferred prosecution agreements with the IRS, under which the entities would "make payments that would be computed based upon the tax liability of various investors, including Mr. Tsai."  ECF No. 1-1, at 1-2.  Mr. Tsai maintained that his request was for "Taxpayer Return Information," and that he and the entities were "related parties" and had a "transactional relationship" under the tax code.  *Id.* at 2.

The IRS responded in June 2022, explaining that it had conducted a search but had not located any responsive records.  ECF No. 1-2, at 1.  In September, Mr. Tsai appealed the determination to the IRS's Independent Office of Appeals.  ECF No. 1-3, at 2-4.  The basis for his appeal was his "sincere belief that the records in question not only exist, but are in the possession of the [IRS] today."  *Id.* at 3.  Mr. Tsai explained that he had been in communication with IRS personnel and "provided a roadmap" on how to find the requested documents, which had been "ignored."  *Id.*  He further represented that during one conversation with an IRS employee, "she specifically stated that inquires within the [IRS] had revealed that there were documents responsive to the request, but that others in the [IRS], perhaps in the Office of Chief Counsel, had directed her that they were not to be provided to [him]."  *Id.*

In September 2022, the IRS denied Mr. Tsai's appeal.  ECF No. 1-4, at 1-2.  The IRS explained that it was "satisfied that a reasonable search for records was performed and that no records were located which [we]re responsive to [the] request."  *Id.* at 1.

Mr. Tsai filed this action in August 2023.  In December, the case was reassigned to the undersigned.  *See* Dec. 14, 2023 Minute Order.  The IRS filed an answer in January 2024.  ECF No. 10.  Because FOIA cases are exempt from the requirements of Federal Rule of Civil Procedure 26(f), *see* Local Civ. R. 16.3(b)(10), the court issued an order directing the parties to meet and confer about several issues and file a joint status report with the court.  ECF No. 11.  The parties thereafter submitted a series of joint status reports explaining that the IRS would be conducting a supplemental search for responsive records.  ECF Nos. 12, 13, 15-17.

During this period, Mr. Tsai's counsel and the Department of Justice ("DOJ") attorney assigned to the case corresponded about Mr. Tsai's request.  ECF No. 21-1, at 18-20.  The DOJ attorney asked for clarification on the scope of his request, writing:

> I think there may be some confused regarding the scope of the request.  It was our understanding that you were looking for "information relative to payments received by the Internal Revenue Service for Mr. Tsai from third parties."  To clarify, are you looking instead for a breakdown of how payments from those third parties *should* have been applied to Mr. Tsai's liabilities?  If you're looking for copies of the third parties' settlements, non-prosecution agreements, or deferred prosecution agreements, this would entail a different kind of search.  Any clarity you can give me regarding the scope of this request would be helpful.

*Id.* at 19.  Mr. Tsai's counsel confirmed that the DOJ attorney's "clarification capture[d] what [Mr. Tsai] wanted."  *Id.* at 20.

In June, the IRS represented that it had completed its supplemental search for records and still "found no responsive records."  ECF No. 17, at 1.  It asked that the court set a briefing schedule

on the IRS's motion for summary judgment, *id.* at 1-2, which the court did, *see* June 10, 2024 Minute Order.

The parties thereafter briefed the IRS's motion for summary judgment. ECF Nos. 20, 21, 26. Mr. Tsai also filed a motion to strike a declaration the IRS had filed in support of its motion for summary judgment, ECF No. 23, and a motion for leave to file a surreply, ECF No. 28. All three motions are fully briefed and ripe for resolution. ECF Nos. 20-21, 23, 24-26, 28-30.

## II.    LEGAL STANDARD

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To prevail on a motion for summary judgment in a FOIA case such as this one, the agency must show "that there is no genuine issue of material fact . . . [by] demonstrat[ing] that it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks omitted). The relevant inquiry for the court "is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate. Id*. (quoting *Weisberg v. Dep't. of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "[S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory

evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). "[O]nce the agency has provided a 'reasonably detailed' affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Pinson v. U.S. Dep't of Just.*, 189 F. Supp. 3d 137, 149 (D.D.C. 2016) (quoting *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

## III.    DISCUSSION

The central question presented on summary judgment is whether there is a dispute of material fact concerning the adequacy of the IRS's search. ECF No. 20-1, at 3-6; ECF No. 21, at 7-12. But the parties have complicated that question by raising several procedural arguments. For its part, the IRS argues that because Mr. Tsai failed to include a statement of material facts with his opposition to the IRS's motion for summary judgment as required by Local Civil Rule 7(h), the facts contained in the IRS's statement are deemed uncontroverted and admitted, foreclosing any dispute of material fact. ECF No. 26, at 4-5. In response, Mr. Tsai moves for leave to file a surreply. ECF No. 28. In the proposed surreply, Mr. Tsai argues that he has meaningfully disputed the facts put forth by the IRS—even if he did not strictly comply with Rule 7(h)—and that summary judgment should therefore be denied. ECF No. 28-1, at 3-4. Mr. Tsai also moves to strike the declaration the IRS filed in support of its motion for summary judgment on the grounds that it states information outside the declarant's personal knowledge. ECF No. 23.

Because resolution of these procedural issues will affect the court's review of the merits, the court will address them first. For the reasons explained below, it will partially grant Mr. Tsai's

motion for leave to file a surreply, excuse his technical noncompliance with Local Civil Rule 7(h), and deny his motion to strike the IRS's supporting declaration.

On the merits, the IRS argues that it conducted an adequate search for records responsive to Mr. Tsai's request, entitling it to summary judgment. ECF No. 20-1, at 3-6. Mr. Tsai responds that he has a good-faith belief, based on conversations with IRS staff, that the agency is withholding responsive documents, making summary judgment improper. ECF No. 21, at 7-12. The court concludes that the IRS performed an adequate search and will thus grant the motion for summary judgment.

### A.    Procedural Matters

#### 1.    Motion for Surreply

While surreplies are "generally disfavored," *Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010), *aff'd*, 701 F.3d 718 (D.C. Cir. 2012), "[i]t is within the court's authority to grant leave to file a sur-reply when 'the party making the motion would [otherwise] be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 657 F. Supp. 2d 104, 108 (D.D.C. 2009), *aff'd*, 383 F. App'x 1 (D.C. Cir. 2010) (quoting *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)). However, "a surreply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties." *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, No. 11-CV-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012). For a surreply to be appropriate, the opposing party's reply must have raised "truly new" arguments. *THEC Int'l-Hamdard Cordova Grp.-Nazari Constr. Co. v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1, 6 (D.D.C. 2018) (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 277 (D.D.C. 2002)). The court should also consider "whether the movant would

be unduly prejudiced were leave to be granted." *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014) (quoting *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012)). Ultimately, "[t]he decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the court." *Flynn v. Veazey Const. Corp.*, 310 F. Supp. 2d 186, 189 (D.D.C. 2004).

In his motion for leave to file a surreply, Mr. Tsai argues that the IRS "raise[s] a number of points seen only for the first time in its Reply—namely, that Mr. Tsai fails to raise any disputed facts, and that discovery is not appropriate in this case." ECF No. 28-1, at 2 (citation omitted). With respect to Mr. Tsai's failure to raise disputed facts, the IRS responds that it did not raise a new argument in its reply; instead, it "simply identified Plaintiff's failure to comply with [Local Civil Rule] 7(h)(1) and noted the potential consequences of this failure." ECF No. 30, at 3. The IRS further argues that a surreply is not appropriate because Mr. Tsai "should not be allowed to benefit from his lack of compliance [with Rule 7(h)] by invoking it as grounds to file an additional brief." *Id.* As to Mr. Tsai's contention that the IRS has raised new points regarding discovery that he should be permitted to respond to, the IRS argues that "a surreply is not necessary" because briefing on any forthcoming motion for discovery "would give [Mr. Tsai] ample opportunity to state his position and respond to any arguments made by [the IRS]." *Id.* at 5. The court concludes that Mr. Tsai's proposed surreply addresses one argument raised for the first time in the IRS's reply and it will permit Mr. Tsai to respond to it.

Specifically, the IRS's motion for summary judgment does not mention Local Rule Civil Rule 7(h), nor does it put forth arguments that its facts must be deemed uncontroverted and admitted. *See* ECF No. 20. While the IRS could not have known that Mr. Tsai would not submit a statement of undisputed material facts at the time that it submitted its motion for summary judgment, it remains the case that the IRS raised arguments regarding the consequences of

Mr. Tsai's failure to comply with Rule 7(h) for the first time in its reply.  A surreply is therefore procedurally appropriate to allow Mr. Tsai to respond to this point.  Moreover, there is no reason that the proposed surreply would prejudice the IRS: it "does not introduce any new facts that would change the outcome of summary judgment in [Mr. Tsai's] favor."  *Amissah v. Gallaudet Univ.*, No. 19-CV-679, 2022 WL 4016592, at *7 (D.D.C. Sept. 2, 2022).

The same cannot be said for Mr. Tsai's arguments about discovery.  It was Mr. Tsai who raised this issue in his opposition brief, ECF No. 21, at 9-12, and the IRS was thus entitled to respond.  In this way, the IRS was not raising a "truly new" argument against discovery in its reply brief.  *THEC Int'l-Hamdard Cordova Grp.-Nazari Constr. Co.*, 301 F. Supp. 3d at 6 (quoting *Pogue*, 238 F. Supp. 2d at 277).  So while the court will exercise its discretion to grant Mr. Tsai's motion for leave to file a surreply as to his arguments regarding Rule 7(h), it will deny the motion and disregard the portions of the surreply pertaining to discovery.

### 2.    Compliance with Local Civil Rule 7(h)

Local Civil Rule 7(h) requires that responses to motions for summary judgment "be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  Local Civ. R. 7(h)(1).  It further provides that "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  *Id.*

"Where a party fails to . . . file a proper statement of material facts in dispute pursuant to a local rule, the circuits are in agreement that the district court is under no obligation to sift through the record, which often contains voluminous deposition transcripts, interrogatory responses, and

8

document productions, in order to evaluate the merits of that party's case." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996). Instead, the court may "deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7(h)] statement." *Id.*

However, the court, "in its discretion, may consider a motion for summary judgment even in the absence of a proper Rule [7(h)] Statement." *Gardels v. Cent. Intel. Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980) (quoting *Johnson v. Am. Gen. Ins. Co.*, 296 F. Supp. 802, 805 n.4 (D.D.C. 1969)). "The invocation of this discretion is appropriate [w]here . . . Defendant's 'conduct is not sufficiently egregious,' and the purposes of Local Rule 7(h) have been satisfied." *Escamilla v. Nuyen*, 200 F. Supp. 3d 114, 120 (D.D.C. 2016) (quoting *Davis v. District of Columbia*, 503 F. Supp. 2d 104, 122 n.20 (D.D.C. 2007)). The central question is whether the "Court is able 'to decide [the] motion[] for summary judgment efficiently and effectively' based on the parties' briefings and has not been 'obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories' in order to do so." *Id.* (second alteration in original) (quoting *Jackson*, 101 F.3d at 150-51).

The IRS argues that Mr. Tsai's "failure to submit responses to Defendant's Statement of Undisputed Material Facts (SUMF) renders them uncontested and thus not in dispute." ECF No. 26, at 1. Mr. Tsai responds that "[h]is [o]pposition [m]emo[randum] may be treated by the Court as its entire statement necessary to show this matter is not ripe for summary judgment" because it "set[s] before the Court all facts and arguments necessary for this Court to determine that the [m]otion [for summary judgment] should be denied." ECF No. 28-2, at 2-3. He also points to the affidavit of his attorney, George W. Connelly, as supporting his version of the facts. *See id.* at 4-5.

The court agrees with the IRS that Mr. Tsai has failed to comply with the requirements of Rule 7(h), such that the court would not abuse its discretion in deeming the IRS's facts undisputed. However, "though not an archetype of good pleading, [Mr. Tsai's opposition] appears to identify the material facts that are in dispute with corresponding citations to [Mr. Connelly's] affidavit." *Escamilla*, 200 F. Supp. 3d at 120. Thus, because the court "is able 'to decide [this] motion[] for summary judgment efficiently and effectively' based on the parties' briefing" and without having to "sift through hundreds of pages of depositions, affidavits, and interrogatories," *id.* (quoting *Jackson*, 101 F.3d at 150-51, the court will exercise its discretion to consider the factual disputes presented in Mr. Tsai's briefing and in the declaration of Mr. Connelly.

### 3.    Motion to Strike

In support of its merits argument that it conducted an adequate search for records responsive to Mr. Tsai's request, the IRS submitted the declaration of Bridget A. Quitter, an attorney in the Office of Chief Counsel at the IRS. ECF No. 20-3 ¶ 1. In her declaration, Ms. Quitter describes the steps taken by various individuals at the IRS to locate records responsive to Mr. Tsai's request. *See generally* ECF No. 20-3. Mr. Tsai moves to strike Ms. Quitter's declaration "for want of the declarant's personal knowledge to the facts declared." ECF No. 23, at 2. Mr. Tsai notes that "[a]ll [of the] information [that] Ms. Quitter has on the IRS's search connected with the [r]equest is second-hand, *ex post* knowledge," which cannot be understood as personal knowledge. *Id.* at 2-3. Mr. Tsai also takes issue with the fact that "Ms. Quitter's [d]eclaration relies heavily on the 'case notes' from the IRS's 'Disclosure Specialist' originally charged with processing Mr. Tsai's [r]equest." *Id.* at 3. The IRS responds that "Ms. Quitter's Declaration displays precisely the type of personal knowledge courts accept as evidence in support of the adequacy of an agency's search in FOIA cases." ECF No. 25, at 3. The court agrees that

Ms. Quitter's declaration is sufficiently based on her personal knowledge for purposes of FOIA and will accordingly deny Mr. Tsai's motion to strike.

Federal Rule of Civil Procedure 56 requires that declarations submitted in support of motions for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In the FOIA context, "declarants are not required to have personal knowledge of the search itself, but rather 'personal knowledge of the procedures used in handling [a FOIA] request and familiarity with the documents in question.'" *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 716 (D.C. Cir. 2022) (alteration in original) (quoting *Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 102 (D.D.C. 2017)). A declaration that "reflect[s] [the declarant's] comprehensive understanding of the documents at issue, as well as her extensive collaboration with the experienced agency employees who searched them," is sufficient to meet the bar of personal knowledge in the FOIA context. *Id.* (quoting *Montgomery v. Internal Revenue Serv.*, 514 F. Supp. 3d 125, 135 (D.D.C. 2021)).

Ms. Quitter's declaration plainly meets this bar. Ms. Quitter avers that the statements in her declaration are "based upon [her] personal review of the documents and upon information furnished to [her] in the course of [her] official duties" and that she is "familiar with efforts made by the [IRS's] personnel to process the subject request." ECF No. 20-3 ¶ 2. She further describes—as Mr. Tsai notes, ECF No. 23, at 3—her review of the case notes produced by Ms. Fernandez Hernandez, the disclosure specialist who initially reviewed Mr. Tsai's request, and mentions that she asked Ms. Fernandez Hernandez clarifying questions where necessary. ECF No. 20-3 ¶ 4. Ms. Quitter also describes "work[ing] with Ms. Fernandez Hernandez[] and IRS Senior Technician Reviewer Vikramsing Barad[] to evaluate the [IRS's] search for responsive

records," explaining that "[i]n addition to discussing the search itself, [the trio] extensively reviewed the information [they] had gathered regarding the relationship between [Mr. Tsai], Peking Investment Fund, LLC, and the other entities named in his FOIA request as possible sources of the alleged third-party payments." *Id.* ¶ 13. Ms. Quitter's detailed declaration "reflect[s] [her] comprehensive understanding of the documents at issue, as well as her extensive collaboration with the experienced agency employees who searched them," and it is thus sufficiently based on her own knowledge. *Montgomery*, 40 F.4th at 716 (quoting *Montgomery*, 514 F. Supp. 3d at 135. Accordingly, the court will therefore deny Mr. Tsai's motion to strike.

## B.    Motion for Summary Judgment

When faced with a FOIA request, an agency need only demonstrate that it "conduct[ed] a search reasonably calculated to uncover all relevant documents" to prevail on a motion for summary judgment. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "The agency is not required to speculate about potential leads . . . [nor is it] obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Id.* Where a FOIA request is unclear, "an agency processing a FOIA request is not required to divine a requester's intent." *Hall & Assocs. v. U.S. Env't Prot. Agency*, 83 F. Supp. 3d 92, 102 (D.D.C. 2015) (collecting cases) (quoting *Landmark Legal Found. v. Env't Prot. Agency*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)).

The regulation that sets forth the IRS's FOIA procedures, 26 C.F.R. § 601.702, offers guidance regarding what constitutes a reasonable description of a requested record. It provides:

> The request for records must describe the records in reasonably sufficient detail to enable the IRS employees who are familiar with the subject matter of the request to locate the records without placing an unreasonable burden upon the IRS. While no specific formula for a reasonable description of a record can be established, the requirement shall generally be satisfied if the requester gives the

name, taxpayer identification number (*e.g.*, social security number or employer identification number), subject matter, location, and years at issue, of the requested records . . . .  It is suggested that the person making the request furnish any additional information which shall more clearly identify the requested records.

*Id.* § 601.702(c)(5)(i).

The IRS argues that because its "search for responsive records was adequate, [it] is entitled to summary judgment."  ECF No. 20-1, at 3.  In support of its argument, the IRS presents Ms. Quitter's declaration, which describes the steps taken by the agency in searching for records responsive to Mr. Tsai's request.  ECF No. 20-3.  Specifically, it explains that once Mr. Tsai's request was received, Ms. Fernandez Hernandez, the disclosure specialist assigned to the case, "began her search for responsive records by using the Service's Integrated Data Retrieval System (IDRS) . . . [which] is the standard procedure for locating taxpayer files, including the type of files sought by [Mr. Tsai]."  *Id.* ¶ 5.  After she found no responsive documents, Ms. Fernandez Hernandez enlisted Revenue Agent Shawn Kennedy to perform "a search of the Public Access to Court Electronic Records (PACER) service . . . [to] review court order information and search for any relevant restitution court cases relative to the request."  *Id.* ¶ 7.  In his search, Mr. Kennedy located the *Peking Investment Fund* case and a related news article, but he reported that "he had found no other records regarding payments from third parties had been applied to Plaintiff's balance due for tax year 2001, and no other records that might have assisted in the discovery of such payments."  *Id.*

Ms. Fernandez Hernandez then reached out to Noe Trujillo, the Restitution-Probation Group Manager in the IRS Civil Enforcement Advice & Support Operations Office ("CEASO"), requesting "information regarding any restitution payment case that may have been opened for Plaintiff."  *Id.* ¶ 8.  Mr. Trujillo performed his own searches of IDRS and PACER, which also turned up no responsive documents.  *Id.* ¶ 9.  He then searched the Criminal Investigations shared

drive, which "would have contained any records related to restitution payments," and the Integrated Collection System, which "displays case management information . . . and actual case activity . . . [that] can be used to identify key custodians and provide context regarding administrative actions taken by the [IRS] regarding a taxpayer." *Id.* ¶¶ 10-11. Mr. Trujillo reported that neither search produced restitution information related to Mr. Tsai. *Id.*

Once Ms. Quitter was assigned to the case, she worked with Ms. Fernandez Hernandez and IRS Senior Technician Reviewer Vikramsing Barad to evaluate the IRS's search for responsive records. *Id.* ¶ 13. Although they "extensively reviewed the information [they] had gathered regarding the relationship between Plaintiff, Peking Investment Fund, LLC, and the other entities named in his FOIA request as possible sources of the alleged third-party payments," they "found no record in any of the materials [they] reviewed that penalties or other payments from these entities were, or could have been, attributed to [Mr. Tsai]'s liability." *Id.* ¶¶ 13-14.

Mr. Tsai counters that he properly described the documents that he wished to receive and that—notwithstanding Ms. Quitter's declaration—he has a good-faith belief that the IRS has, but is unwilling to produce, the desired records. ECF No. 21, at 1-5. As support, Mr. Tsai offers the declaration of his attorney, Mr. Connelly, who alleges that during a follow-up phone conversation, Ms. Fernandez Hernandez "confirmed that the records [he] had requested did exist, but that the IRS Counsel's Office instructed the Disclosure Function not to turn them over to [him]." ECF No. 21-1 ¶ 14. Mr. Connelly further avers that "Ms. Hernandez never affirmed that the [requested] documents did not exist, nor that if they existed, they would have been subject to any exemption under FOIA or IRC Section 6103." *Id.* ¶ 15.[2]

---

[2] To the extent that the parties differ in their descriptions of what was said in the conversation between Mr. Connelly and Ms. Fernandez Hernandez, *see* ECF No. 21-1 ¶¶14-15; ECF No. 20-2

The IRS responds that while Mr. Tsai "now contends that his FOIA request encompasses more than 'information relative to payment received by the [IRS] for Mr. Tsai from third parties,' the FOIA request failed to reasonably describe those records." ECF No. 26, at 2. And to the extent that Mr. Tsai believes his later communications with the DOJ clarified his request, the IRS explains that Mr. Tsai improperly and "substantially chang[ed] his characterization of his FOIA request after filing suit in federal court," and argues that the proper course of action is for Mr. Tsai to "file subsequent FOIA requests to explore new lines of inquiry." *Id.* at 3. But the agency resists Mr. Tsai's attempt to "'jump the line by way of a subsequent clarification' in lieu of a subsequent FOIA request subject to normal processing." *Id.* (quoting *Brown v. Wash. Metro. Area Transit Auth.*, No. 19-CV-2853, 2020 WL 806197, at *11 (D.D.C. Feb. 18, 2020)). The court agrees with the IRS.

Based on the request Mr. Tsai tendered, the court is satisfied that the IRS conducted an adequate search. In the first paragraph of his request, Mr. Tsai writes that he is "asking [the IRS] to provide information relative to payments received *by* the Internal Revenue Service *for* Mr. Tsai *from* third parties." ECF No. 1-1, at 1 (emphases added). He then goes on for several paragraphs to describe his involvement in the Peking Investment Fund, and he notes that several entities involved with the Fund entered into settlement, non-prosecution, and deferred prosecution agreements with the IRS. *Id.* at 1-2. But at no point does he specifically ask for documents related to these entities. *See id.* Mr. Tsai then explains that "[t]he [i]nformation requested is 'Taxpayer Return Information' with respect to [himself]." *Id.* at 2. While he adds that "because of the nature of the payments, [he] and the[] entities are all 'related parties' as defined in I.R.C. § 6103 . . . [and]

---

¶¶ 15-16, the court finds that this disputed fact is not material because it concerns records that were not reasonably described by Mr. Tsai's request, *see infra* pp. 15-17.

had a 'transactional relationship' [with Mr. Tsai], as defined by I.R.C. § 6103," *id.*, he does not

make a request for records beyond those applicable to him.  After receiving his request, the IRS

looked for "information relative to payments received by the [IRS] for Mr. Tsai from third

parties"—as Mr. Tsai had asked it to do—and it came up empty-handed.  ECF No. 1-1, at 1.[3]

The email exchanges between counsel during the course of litigation reflect the gap

between what Mr. Tsai had actually requested and what he apparently intended to request.

Specifically, when government counsel asked if Mr. Tsai was requesting "a breakdown of how

payments received from third parties" involved with the Peking Investment Fund "*should* have

been applied to Mr. Tsai's liabilities," ECF No. 21-1, at 19, Mr. Tsai's counsel replied in the

affirmative, *id.* at 20.  But government counsel had already explained that "this would entail a

different kind of search," and that the IRS had understood Mr. Tsai's request as one for

"information relative to payments received by the [IRS] for Mr. Tsai from third parties." *Id.* at 19.[4]

Given that the records Mr. Tsai was hoping to receive were not apparent from the "four

corners of [his] request," *Kowalczyk*, 73 F.3d at 389, the IRS was not required to "divine" his

---

[3] Curiously, Mr. Connelly appears to acknowledge that such a targeted request would yield no responsive records, stating in his declaration that "to the best of [his] knowledge, no such amount has actually been applied to the income tax liability of Mr. Tsai for taxes resulting from his participation in the Peking shelter, although a number of prominent organizations were involved in the creation of that shelter and entered into settlement or non-prosecution agreements."  ECF No. 21-1 ¶ 9; *see id.* ¶ 12 ("At no time did I ask whether any amounts had actually been paid from these settlements and applied to [Mr. Tsai's] liability, as I know that none had been so applied at that time.").

[4] Section 601.702(c) also provides that "[w]here the requester does not reasonably describe the records being sought, the requester shall be afforded an opportunity to refine the request," which "may involve a conference with knowledgeable IRS personnel at the discretion of the disclosure officer."  26 C.F.R. § 601.702(c)(5)(i).  Mr. Tsai does not argue that the IRS failed to give him this opportunity; to the contrary, Mr. Connelly's declaration reflects that Mr. Tsai was given several opportunities, both during the pendency of his initial FOIA request and while this case was pending, to discuss and supplement his request.  ECF No. 21-1 ¶¶ 14, 23-26.  The court therefore finds that the IRS complied with the portion of its regulation that allows requesters to refine their requests.  *See* 26 C.F.R. § 601.702(c)(5)(i).

intentions, *Hall & Assocs.*, 83 F. Supp. 3d at 102 (quoting *Landmark Legal Found.*, 272 F. Supp. 2d at 64).  If Mr. Tsai still wishes to receive the documents he believes are in the IRS's possession, he should craft and submit a better FOIA request.  *See Kowalczyk*, 73 F.3d at 389.  But based on the request that Mr. Tsai did submit, the IRS is entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part Mr. Tsai's motion for leave to file a surreply, ECF No. 28, deny Mr. Tsai's motion to strike, ECF No. 23, and grant the IRS's motion for summary judgment, ECF No. 20.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 14, 2025